**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION**

NO. 5:09-CR-00176-FL-1
NO. 5:11-CV-00476-FL

| | | |
|---|---|---|
| CHRISTOPHER SMITH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This cause comes before the Court upon respondent government's motion to dismiss (DE-42) petitioner Christopher Smith's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody ("motion to vacate") (DE-38). Smith has filed a response (DE-46), and the government's motion to dismiss is therefore ripe for adjudication. Pursuant to 28 U.S.C. 636(b)(1), this matter is before the undersigned for the entry of a memorandum and recommendation. For the following reasons, it is hereby RECOMMENDED that the motion to dismiss (DE-42) be GRANTED and that Smith's motion to vacate (DE-38) be DENIED.

**I.  BACKGROUND**

On October 5, 2009, Smith pled guilty to possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). (DE-20, DE-33). According to Smith's presentence investigation report, he was responsible for 224.15 grams of crack cocaine, for a base offense level of 32. (DE-25, DE-35). This amount consisted of 25.7 grams of crack

1

found in Smith's vehicle when he was arrested and an additional 198.45 grams that a confidential informant reported he had purchased from Smith. Smith objected to inclusion of the 198.45 grams as relevant conduct. (DE-25, p.12). At sentencing, the district court heard testimony from Officer Phillip Lewis that the confidential informant told Lewis that he had purchased seven or eight ounces of crack cocaine from Smith between 2007 and 2009. (DE-34, p.10). Lewis was aware that federal authorities had recordings of a suspected drug dealer stating that Smith was selling drugs. Lewis testified that the informant had provided law enforcement officers with accurate information about both Smith and a third drug dealer. Under Lewis's direction, the informant set up a controlled buy of crack cocaine from Smith on January 30, 2009. Following Lewis's testimony, the district court found that the government had established by a preponderance of the evidence that the disputed 198.45 grams of crack cocaine was properly included as relevant conduct. (DE-34, p.22). The district court sentenced Smith to 121 months' imprisonment. (DE-30).

Upon appeal, the Fourth Circuit held that the district court did not err in finding that Smith was responsible for the disputed 198.45 grams of crack cocaine. The Fourth Circuit noted that hearsay evidence is admissible at sentencing; the informant was reliable; Smith was already suspected to be a drug dealer; and the informant "easily arranged the controlled purchase of one ounce of crack, suggesting that Smith previously had sold crack to the informant." (DE-35, p.5). Under these circumstances, the Fourth Circuit held, "it was not clear error for the district court to include the disputed amount of crack as relevant conduct." (*Id.*). The Fourth Circuit also rejected Smith's argument that the district court erred in relying on information relayed through the confidential informant to determine relevant conduct. Accordingly, the Fourth Circuit affirmed the judgment of the district court. (DE-35, DE-36).

On September 8, 2011, Smith filed the instant motion to vacate under 28 U.S.C. § 2255, asserting that his sentence should be vacated and set aside on the grounds that he received ineffective assistance of counsel during sentencing proceedings and on appeal. (DE-38). The government asserts Smith fails to state a viable claim of ineffective assistance of counsel and asks the Court to dismiss his motion to vacate. (DE-42).

## II. LEGAL STANDARDS

### A. Motion to Dismiss

The government has filed its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, a plaintiff must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The facts alleged must "raise a right to relief above the speculative level," id. at 555, and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id. A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 1950. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are

3

"merely consistent with" a defendant's liability, Twombly, 550 U.S. at 557, fail to nudge claims "across the line from conceivable to plausible." *Id.* at 570.

**B.   28 U.S.C. § 2255**

Under section 2255, Title 28 of the United States Code, a petitioner may obtain relief from his sentence if he can show that his "sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law."    28 U.S.C. § 2255(a).   The burden is on the petitioner to establish his claim to relief by a preponderance of the evidence. *See, e.g.*, Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence . . . ."); Toribio-Ascencio v. United States, Nos. 7:05-CR-00097-FL, 7:08-CV-211-FL, 2010 U.S. Dist. LEXIS 113549, at *5 (E.D.N.C. Oct. 25, 2010) ("In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence.").

**C.      Ineffective Assistance of Counsel**

Smith asserts his counsel was constitutionally deficient.   To state a claim of ineffective assistance of counsel, a petitioner must satisfy a two-pronged test.   Strickland v. Washington, 466 U.S. 668, 686-87 (1984).   First, a petitioner must show that the representation he received fell below an objective standard of reasonableness. *Id.* at 688.   This Court must be "highly deferential" of counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." *Id.* at 689.   Therefore, the Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* Concerning the second prong, a petitioner must "show that there is a reasonable probability that,

4

but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "To demonstrate prejudice at sentencing, petitioner must show a reasonable probability that he would have received a more lenient sentence if not for counsel's errors." Whitley v. United States, Nos. 7:07-CR-142-FL, 7:09-CV-144-FL, 2011 U.S. Dist. LEXIS 56799, at *7 (E.D.N.C. May 24, 2011) (citing Glover v. United States, 531 U.S. 198, 202-04 (2001) and United States v. Russell, 34 F. App'x 927, 928 (4th Cir. 2002) (unpublished)).

III.  **ANALYSIS**

Smith presents three related arguments for ineffective assistance of counsel. Smith essentially contends that the 198.45 grams of crack cocaine attributed to him for purposes of sentencing was erroneous, and that but for counsel's errors, he would have received a more lenient sentence. He first argues that testimony regarding a telephone conversation between the confidential informant and Officer Lewis was improperly considered by the district court. Second, he contends his counsel should have requested production of Lewis's handwritten notes. Finally, Smith asserts the district court failed to make findings that the 198.45 grams of crack cocaine were part of the same course of relevant conduct, and that his attorney was ineffective in lodging no objection. Reviewing Smith's claims in their entirety, the undersigned agrees with the government that Smith is attempting to re-litigate issues already raised and decided adversely against him at sentencing and on direct appeal under the guise of an ineffective assistance of counsel claim. To the extent Smith cloaks his prior arguments as ineffective assistance of counsel, these claims lack merit and should be summarily dismissed. *See* Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (stating that a defendant may not "recast, under the guise of a collateral attack, questions fully considered by this court [on direct appeal]"). The undersigned nevertheless addresses Smith's arguments in turn.

5

**A. Testimony Regarding Telephone Conversation**

At sentencing, Lewis testified that he personally interviewed the confidential informant at the

Spring Hope Police Department. The interview was not recorded; however, Lewis "jot[ted] down

some notes" during the interview and later prepared a written report. (DE-34, pp.15,18). Lewis

testified the informant told him, among other things, that

> he had [gone] to school with Mr. Smith, and during this time they became friends,
> and he ended up purchasing an amount of 7 to 8 ounces of cocaine from Mr. Smith.
>
> Q. During what time period?
>
> A. Later I contacted him, and he said approximately '07 through '09.

(DE-34, p.10).

> During cross-examination, counsel for Smith asked Lewis about his later contact with the

confidential informant:

> Q. On direct you testified that . . . this informant, was later contacted and said that
> these other transactions with my client, Christopher Smith, occurred between 2007
> and 2009; is that right?
>
> A. Yes, sir.
>
> Q. Did you prepare a report about that interview with [the confidential informant]?
>
> A. No. I was contacted by the U.S. Attorney's Office to ask [the confidential
> informant] a time frame. I contacted him that day. He advised approximately
> '07-'09.
>
> Q. So, when were you contacted by the U.S. Attorney's Office to follow up with
> [the informant]?
>
> A. I don't remember the exact date.
>
> Q. Was it in the last three months?
>
> A. I don't believe so. I believe it was probably the last six months.
>
> Q. You did that interview over the phone or in person?

A. I called him on the telephone just to ask him the question.

Q. Did you ask if he was under the influence of drugs or alcohol at that time?

A. No, sir.

Q. Are you aware that in the year of 2007 my client was in custody for a period of time, up to six months?

A. No, sir.

(DE-34, pp.18-19).

Also during cross-examination, counsel for Smith elicited the following facts: that the confidential informant was a drug user; that he was not in custody, although criminal proceedings against him were pending in state court; and that Lewis waited several months to prepare his written report. (DE-34, pp.18-19).

Smith now argues his counsel should have objected to Lewis's testimony "because the informant's statement relied on by Officer Lewis was unobserved and given by phone to an officer who could not form an opinion as to his veracity." (DE-38-1, p.9). However, Lewis specifically testified that the informant was reliable and had provided valuable assistance in a separate investigation. (DE-34, p.12). Thus, Lewis had already formed an opinion as to the informant's veracity before the telephone conversation took place. And as the district court and the Fourth Circuit noted, hearsay evidence is admissible during a sentencing hearing. There was therefore nothing objectionable in Lewis's testimony regarding the telephone conversation. Counsel cannot be found deficient for failing to object when there was no basis to do so.

Moreover, to the extent that Smith contends that his counsel failed to sufficiently object to the 198.45 grams of crack cocaine, even a cursory review of the record reveals just the opposite. Counsel for Smith repeatedly and vigorously attempted to discredit the information given by the confidential informant regarding the 198.45 grams of crack cocaine. Counsel for Smith objected

7

to the presentence report on the grounds that "the information offered by the confidential informant has not been verified and is, therefore, neither credible nor reliable" and argued that "the information should be removed from the Presentence Report and the defendant should not be held accountable for the additional drug weight." (DE-25,p.12). At the sentencing hearing, defense counsel cross-examined Lewis regarding the information and the circumstances surrounding the interview and subsequent telephone conversation between Lewis and the informant. Defense counsel argued to the district court that there was not "adequate evidence to hold Mr. Smith accountable for" the 198.45 grams of crack cocaine and that he had "not had an opportunity to confront the witness against him in connection with that drug weight." (DE-34,p.7). Unfortunately for Smith, the district court found otherwise. On appeal, counsel for Smith argued the district court erred in holding him accountable for the disputed drug weight, but the Fourth Circuit rejected this argument and affirmed the district court. Thus, the record clearly shows that both trial and appellate counsel for Smith actively pursued his objections to the 198.45 grams of crack cocaine being included as relevant conduct for sentencing purposes.

Smith thus fails to demonstrate any deficiency in counsel's performance. Nor does he show, as he must, any prejudice arising from his counsels' alleged errors. As noted by the United States Supreme Court,

> [i]t is not enough to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.

Strickland, 466 U.S. at 693.

Here, defense counsel conducted a thorough cross-examination of Lewis emphasizing the potentially unreliable nature of the information given by the confidential informant. Lewis

testified that when he personally interviewed the informant, the informant advised he had purchased "7 to 8 ounces of cocaine from Mr. Smith." (DE-34, p.10). The brief, follow-up telephone conversation between Lewis and the confidential informant concerned only the time frame for the cocaine purchases, not the amount of the cocaine sold. Smith fails to show that, even if defense counsel had specifically objected to Lewis's testimony regarding the telephone conversation, the district court would have excluded the 198.45 grams of crack cocaine from the relevant conduct. On the contrary, the district court judge "suspect[ed] that probably there was a lot more drugs at issue over [the relevant] time period under the circumstances." (DE-34, p.22). There is therefore nothing to indicate that, but for defense counsel's failure to object to Lewis's testimony regarding the telephone conversation, he would have received a more lenient sentence. Likewise, there is no reasonable probability that the Fourth Circuit would have reversed the district court had appellate counsel assigned error to this issue. When considering Smith's arguments on direct appeal, the Fourth Circuit concluded that the conviction and sentence imposed by the district court were, in all material respects, proper. Accordingly, even assuming that Smith could rebut the presumption that his counsel rendered reasonable professional assistance, he cannot show that the result of the proceedings would have been different had counsel done more. As such, he has shown no error of constitutional magnitude. He therefore fails to state a claim for ineffective assistance of counsel.

**B. Officer Lewis's Notes**

Smith contends his counsel was deficient for failing to move, pursuant to Fed. R. Crim. P. 26.2 and/or 18 U.S.C. § 3500 (Jencks Act), for the production of Officer Lewis's handwritten notes of the interview he conducted with the confidential informant. Lewis testified that he "jot[ted] down some notes" during the interview and later prepared a typewritten report. (DE-34,

pp.15,18).   The confidential informant did not read Lewis's notes or sign them.   (DE-34, p.16).

Lewis's typewritten report was produced to the defense, first in a redacted form, then in an

unredacted form.   (DE-38-2).   Smith contends his counsel's failure to request production of the

handwritten notes constitutes deficient performance and resulted in a harsher sentence.

An investigator's notes may sometimes qualify as Jencks material upon a proper

foundational showing.   The Fourth Circuit has stated:

> To invoke a court's duty under the [Jencks] Act, a defendant must, after the
> direct testimony of a government witness, first make a sufficiently specific request
> and provide some indication that the witness gave a pretrial statement to a
> government agent generally related to the witness' direct testimony.   The
> defendant's showing need not be great, but it must be more than a mere automatic
> demand for government witness' statements . . . . After the defendant provides a
> foundation sufficient to invoke the court's duty under the Act, the court may review
> the document *in camera* and consider evidence extrinsic to the document to
> determine whether it is a "statement."

United States v. Roseboro, 87 F.3d 642, 645-46 (4th Cir. 1996) (citations omitted).

As a general rule, however, "'[r]ough' or handwritten notes, especially those incorporated

later into a typewritten report or other memorandum, . . . are not 'statements' subject to disclosure

under the Jencks Act."   United States v. Banks, No. 97-0086-C, 1998 U.S. Dist. LEXIS 3272, at

*3-4 (W.D. Va. Mar. 5, 1998) (citing Roseboro, 87 F.3d at 646 (FBI agent's notes not a Jencks Act

"statement") and United States v. Smith, 31 F.3d 1294, 1301 (4th Cir. 1994) (prosecutor's pretrial

interview notes not a Jencks Act 'statement')).   Further, "rough notes may not qualify as a Jencks

Act statement where they are 'scattered jottings' rather than a formal memorandum or report, or

where the investigator did not sign the notes or otherwise affirmatively indicate that he had

adopted them as his statement."   *Id.* (citing United States v. Mora, 994 F.2d 1129, 1139 (5th Cir.

1993)).

As Lewis's "jottings" were not signed and were later incorporated into a typewritten report,

the evidence indicates that Lewis's notes do not qualify as Jencks material. <u>Roseboro</u>, 87 F.3d at 646 (concluding that the agent's notes of an interview did not qualify as Jencks material where there was no evidence that the witness adopted the notes or that the agent was attempting to make a verbatim record of the interview). Smith thus cannot show that his counsel was deficient for failing to request Lewis's notes.[1] More importantly, however, there is no indication that had Lewis's notes been produced, they would have provided impeachment material sufficient to alter the outcome of the proceeding. As noted *supra*, counsel for Smith conducted a thorough cross-examination of Lewis regarding the information relayed by the confidential informant. There is no reasonable probability that the district court would have imposed a more lenient sentence had Lewis's notes been available for purposes of additional impeachment. *See* <u>Lovern v. United States</u>, 689 F. Supp. 569, 590-91 (E.D. Va. 1988) (rejecting section 2255 petitioner's claim of ineffective assistance based on counsel's failure to move for Jencks Act materials). As Smith fails to demonstrate that his counsel's performance fell outside the "wide range of reasonable professional assistance," <u>Strickland</u>, 466 U.S. at 689, or that he suffered prejudice because of any of the alleged deficiencies, *id*. at 694, his claim of ineffective assistance of counsel should be dismissed.

## C.  <u>Findings Regarding Relevant Conduct</u>

Finally, Smith argues that defense counsel was deficient for not requesting that the district court make specific factual findings with respect to the 198.45 grams of crack cocaine. Smith contends the district court failed to make necessary findings that the 198.45 grams were part of the same course of conduct or common scheme and thus qualified as relevant conduct for sentencing purposes. This argument is without merit. The district court adopted the presentence report as

---

1. It should be noted that defense counsel filed a general motion for discovery.  (DE-10).

its factual findings and also specifically found that "the government . . . sustained its burden of proof with respect to the 198.45 [grams], which, when added to the amount on [Smith's] person, supports the advice of the guidelines." (DE-34, pp.22, 27). The district court also noted that Smith's objection to the consideration of the relevant conduct was "well-documented on the record." (DE-34,p.22). Further, the testimony elicited from Lewis on direct examination more than adequately showed that the 198.45 grams were part of the same "course of conduct or common scheme" in order to qualify as relevant conduct under the sentencing guidelines. According to the confidential informant, he had been purchasing drugs from Smith at the same location over an eighteen-month period, beginning with Smith's release from a prior term of incarceration in 2007 and continuing through 2009. Smith shows neither deficiency in counsel's performance nor prejudice arising from this alleged error. As such, he fails to state a claim upon which relief can be granted.

## IV.  CONCLUSION

Because Smith fails to show that his counsel's performance was objectively unreasonable or demonstrate that prejudice resulted from his counsel's alleged errors, the undersigned finds that Smith has not sustained his claims of ineffective assistance of counsel. Thus, for the foregoing reasons, it is hereby RECOMMENDED that the government's motion to dismiss (DE-42) be GRANTED and that Smith's motion to vacate (DE-38) be DENIED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Monday, March 26, 2012.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE

12